UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                                         Case No. 11-CR-197

ADELL SHARP,

      Defendant.

---

ORDER ADOPTING RECOMMENDATION OF THE MAGISTRATE JUDGE (DOC. 57) AND DENYING MOTIONS TO SUPPRESS EVIDENCE AND STATEMENTS (DOC. 35)

Adell Sharp filed motions to suppress evidence obtained as a result of the search of his residence on February 2, 2011, and all statements he made following his seizure by police officers on that same date. Magistrate Judge Patricia J. Gorence held an evidentiary hearing on May 14, 2013, and issued a recommendation on July 9, 2013, that the motions to suppress be denied. Sharp objects to the recommendation.

Regarding motions to suppress evidence, a magistrate judge may propose findings and make recommendations but the district judge decides the motion. 28 U.S.C. § 636(b)(1)(A), (B); Fed. R. Crim. P. 59(b)(1). The district judge reviews de novo the recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2), (3). Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Sharp believes Magistrate Judge Gorence's discussion of the law concerning motions to suppress, consent searches and investigative stops is correct, however, he objects to the magistrate judge's application of that law to the facts of this case. This court

has reviewed Magistrate Judge Gorence's discussion of applicable law and finds no clear error. Hence, her discussion of law is adopted.

The court also finds that the record developed by the parties before the magistrate judge is sufficient for the court to rule on defendant's pending objection and motion to suppress. As a consequence, no further evidentiary hearing is required.

First, Sharp contends that Bernadette Day did not give voluntary consent to the search of the residence she shared with Sharp. Sharp points out that the magistrate judge failed to discuss that Day was awakened by the officers (it was after 10:00 p.m. on February 2, 2011) and had been suffering a migraine that day. He also contends that Day assumed that the police had a warrant because an unidentified police officer waved a paper and that officers threatened Day by saying they could bring dogs to the house. Sharp further argues that Day was scared and felt pressured to consent.

This court has reviewed the transcript of Day's interview, the transcript of the evidentiary hearing, as well as Day's signed consent form. Moreover, the court has listened to the recording of Day's interview by Police Officer Rachel Goldbeck during which Day stated that she was not mistreated by the police and had consented to a search of the home. Magistrate Judge Gorence found incredible Day's in-court testimony regarding an implied search warrant and threat of dogs. Based on this review, the court finds Judge Gorence's determination is supported by the record and should be adopted. Day's testimony regarding the threat of dogs is particularly suspect; during the suppression hearing she waffled on whether a female or male officer mentioned dogs and whether dogs were mentioned during her recorded statement although the recording shows otherwise.

2

(Hr'g Tr. at 80-81.) At best, this suggests that Day's memories of the evening were inaccurate.

Moreover, the court is persuaded that Day's consent was voluntary. She stated several times that she wanted to cooperate with the police and that she consented to a search of the home. Although she appears to have been concerned about her job, the facts indicate that she freely and voluntarily allowed officers to search the residence. From the officers' and her own reports of her statements and actions the night of February 2, 2011, it appears Day was not impaired by a migraine or by being awakened at approximately 10:15 p.m.

Although Magistrate Judge Gorence did not expressly find defendant Sharp's testimony incredible, her acceptance of Officer Ivy's testimony regarding his interaction with Sharp implies portions of Sharp's testimony were rejected. The magistrate judge was entitled to credit one witness's testimony over another's inconsistent testimony. Moreover, the facts as accepted by Magistrate Judge Gorence and as suggested by Sharp cause this court to conclude that reasonable suspicion existed for the officers to conduct an investigatory stop of Sharp. Whether Sharp was patted down immediately or led by the elbow to the back hallway of the residence, he was detained, but not illegally.

Regardless of whether Sharp stopped when the officer called his name or instead turned and walked quickly down the driveway, he was approaching the side door of a house where officers were following up a complaint about high level drug dealing that was described as occurring between 6:00 p.m. and midnight. Moreover, he was approaching that house in the late evening hours during the time frame suggested by the anonymous tip. Sharp walked up to the side door of the home—not the front door where a member of

3

the general public might approach, suggesting a purposeful approach or connection to the residence. And, he turned abruptly after seeing a police officer. Moreover, Day had identified an Adell Sharp as living with her. The man approaching the home could have been Adell Sharp and thus connected to the anonymous tip activity, or he could have been a customer. Whether Sharp denied being Adell Sharp or instead was trying to prove he was Adell Edwards as well, his response did not overcome a possible connection to the house.

Further, regardless of whether Sharp had his hands in his pockets initially or only after being asked his name, and whether Sharp had his hands in his pockets only because it was cold outside or because he was attempting to get out his identification, Sharp's hands were in his pockets. The officers could interpret that, taken together with the other facts, as suspicious or a danger to their safety. As Officer Ivy testified, the tie between drug dealing and weapons is commonplace. Hence, under the totality of circumstances, the officers had specific and articulable facts that justified stopping Sharp to question him about the tip and patting him down. Therefore,

IT IS ORDERED that Magistrate Judge Gorence's recommendation is adopted and the motion to suppress fruits of the search and Sharp's statements (Doc. 35) is denied.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE